**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

ALAN KITLER, MICHAEL KITLER and
KRESTEN BALLANTYNE,

                Plaintiffs,

    v.

THE CHURCH OF JESUS CHRIST OF LATTER-
DAY SAINTS (a corporation), RONALD BOYCE
(an individual), ROD STANDAGE (an individual),
ERIC SELIN (an individual), JOSHUA MADSEN
(an individual), ROBERT RUBILAR (an
individual), EUGENE JENKINS (an individual),
JOHN VOM LEHN (an individual), CLYDE
MAUGHAN (an individual), VAN SLYKE (an
individual), DOLORES METZGER (an individual),
and DOES 1-500, Inclusive,

                Defendants.

1:24-cv-01071 (AMN/PJE)

---

**APPEARANCES:**

**HINCKLEY, ALLEN & SNYDER LLP**
30 South Pearl Street, Suite 901
Albany, NY 12207
*Attorneys for Plaintiffs*

**ANDREWS & THORNTON**
4701 Von Karman Ave – Suite 300
Newport Beach, CA 92660
*Attorneys for Plaintiffs*

**WATTS LAW FIRM, LLP**
811 Barton Springs Rd. - Suite 725
Austin, TX 78704
*Attorneys for Plaintiffs*

**BARCLAY DAMON LLP**
80 State Street
Albany, NY 12207
*Attorneys for Defendant The Church
of Jesus Christ of Latter-Day Saints*

**OF COUNSEL:**

**CHRISTOPHER V. FENLON, ESQ.**


**ANNE ANDREWS, ESQ.**
**KIMBERLY M. DEGONIA, ESQ.**
**RYAN M. MCINTOSH, ESQ.**
**SEAN T. HIGGINS, ESQ.**

**DAMON C. SINGLETON, ESQ.**


**MICHAEL J. MURPHY, ESQ.**

**LUIBRAND LAW FIRM, PLLC**   **ELIZABETH M. HARMON, ESQ.**
950 New Loudon Road – Suite 270  **KEVIN A. LUIBRAND, ESQ.**
Latham, NY 12110
*Attorneys for Defendant Ronald Boyce*

**PHILLIPS LYTLE LLP**     **DAVID L. COOK, ESQ.**
100 South Clinton Ave. – Suite 2900
Rochester, NY 14604
*Attorneys for Defendants Rod Standage,*
*Eric Selin, Joshua Madsen, Robert Rubilar,*
*Eugene Jenkins, John Vom Lehn, Clyde Maughan,*
*Van Slyke, and Dolores Metzger*

**Hon. Anne M. Nardacci, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiffs Alan Kitler, Michael Kitler (the "Kitler Plaintiffs"), and Kresten Ballantyne (collectively "Plaintiffs") bring this action pursuant to the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1595(a) ("TVPRA") and assert various state law causes of action against The Church of Jesus Christ of Latter-Day Saints (the "Church"), Ronald Boyce, Rod Standage, Eric Selin, Joshua Madsen, Robert Rubilar, Eugene Jenkins, John Vom Lehn, Clyde Maughan, Van Slyke, and Dolores Metzger (collectively "Defendants"). Dkt. No. 1 ("Complaint"). Presently before the Court are three separate motions to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. Nos. 45, 49, 59 (the "Motions"). Plaintiffs responded to each of the Motions. Dkt. Nos. 51, 52, 64. In turn, Defendants filed replies. Dkt. Nos. 54, 60, 65.

For the reasons set forth below, the Motions are granted in part and denied in part.

## II. BACKGROUND

Unless otherwise noted, the following facts are drawn from the Complaint, its attachments, or materials it incorporates by reference. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152

(2d Cir. 2002) (noting that on a motion to dismiss, "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference" (citation omitted)). The allegations are assumed to be true for purposes of ruling on the Motion, *see Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (*per curiam*), or are otherwise matters of public record, *Williams v. N.Y.C. Hous. Auth.*, 816 F. App'x 532, 534 (2d Cir. 2020).

### A. Plaintiffs' Allegations

This case arises out of Plaintiffs' allegations that they were sexually abused by Defendant Boyce for years while they were minors and members of the Church in Schenectady, New York. Dkt. No. 1 at ¶¶ 3-12.

### i. Abuse in the Church Generally

Generally, Plaintiffs allege that the Church "maintains a pattern and practice of concealing abuse from the authorities." *Id.* at ¶ 56. According to Plaintiffs, the Church has a history of inadequately responding to reports of sexual abuse against its members, and its conduct "ratifies abusive conduct, perpetuat[es] a culture of concealment[,] and encourag[es] a lack of cooperation . . . with law enforcement." *Id.*; *see also id.* at ¶ 67. In particular, the Complaint alleges that the Church maintains a national "Helpline" for the nominal purpose of reporting incidents of sexual assault in the Church, but that, in reality, the Helpline is used by the Church to identify potential liabilities and to discourage callers from reporting sexual abuse to law enforcement. *Id.* at ¶¶ 61-64. The Church is also alleged to have relocated individuals accused of sexual abuse to different wards, or local congregations, of the Church rather than hold such individuals accountable. *See id.* at ¶¶ 26, 67, 161. Plaintiffs allege that this case represents another example of the Church's mishandling of reports of sexual abuse. Prior to meeting any of the Plaintiffs, Defendant Boyce is

alleged, upon information and belief, to have been "disciplined in Utah for sexually assaulting track athletes." *Id.* at ¶ 27. The Church, however, "decided to move Defendant Boyce from Utah to Schenectady, New York," where the alleged events pertinent to this case took place, "rather than pursue legal or disciplinary action against him." *Id.* at ¶ 161.

### ii.  Kitler Plaintiffs

The Kitler Plaintiffs allege that they were sexually abused by Defendant Boyce from 1994 to 2001. *Id.* at ¶ 4. At some point in 1994, the Church assigned Defendant Boyce to be the Kitler Plaintiffs' "Home Teacher" and "Seminary Teacher." *Id.* at ¶¶ 5, 69. At the time, Alan and Michael Kitler were 12 and 13 years old respectively, and their mother was "undergoing a divorce." *Id.* at ¶ 69. In light of the family's situation, the Church assigned Defendant Boyce to "act[] as a mentor, spiritual guide, and father figure to the boys." *Id.*

The Complaint alleges that Defendant Boyce used this assignment to groom and sexually abuse the Kitler Plaintiffs. Plaintiff Alan Kitler was allegedly sexually abused "on a near-daily basis." *Id.* at ¶¶ 69-70. Plaintiff Michael Kitler alleges he was abused "weekly[.]" *Id.* at ¶ 87. Defendant Boyce allegedly subjected Plaintiff Alan Kitler to "hundreds of sexual abuse incidences [*sic*] of rape, sodomy, fondling, kissing, groping, and oral copulation" from 1994 to 2001. *Id.* at ¶ 75. During the same period, Defendant Boyce allegedly forcibly groped, masturbated in front of, and attempted to coerce Plaintiff Michael Kitler into having penetrative sex, often while performing massages. *Id.* at ¶¶ 87-93. The alleged abuse occurred in Defendant Boyce's home, in the Kitler family's home, on Church-sponsored trips, and on other overnight trips. *Id.* at ¶¶ 71, 88. Defendant Boyce allegedly used coercion, force, and manipulation to convince the Kitler Plaintiffs to stay alone at his house. *Id.* at ¶¶ 76, 94. He also "made constant threats," such as telling the Kitler Plaintiffs that they were being watched and that he had many connections to

lawyers and judges through the Church. *Id*. The Complaint asserts that the Kitler Plaintiffs were drugged using "crushed up white pills" so that Defendant Boyce could more easily "overpower them" during the alleged abuse. *Id*. at ¶ 138. The Complaint also alleges that Defendant Boyce gave the Kitler Plaintiffs clothing, video games, jewelry, trips, and tickets to sporting events, all in exchange for sex acts. *Id*. at ¶ 139. Defendant Boyce threatened to confiscate every item he had given to the Kitler Plaintiffs if they did not remain silent about the sexual abuse. *Id*. at ¶¶ 77, 95. The Complaint alleges that these gifts were purchased using funds provided by the Church. *Id*. at ¶¶ 97-98, 140.

The Church allegedly received several reports regarding the abuse of Alan and Michael Kitler. First, in 1994, the Kitler Plaintiffs' mother "vocalized her concerns regarding [Defendant] Boyce's inappropriate behavior around her sons" to Defendant Maughan, a Bishop with the Church. *Id*. at ¶ 99. Elsewhere in the Complaint, Plaintiffs allege that, around the same time, the Kitler Plaintiffs' mother similarly "made a report of extreme sexual abuse" to Defendants Van Slyke and Metzger, teachers with the Church. *Id*. at ¶ 155. The Complaint alleges, upon information and belief, that Defendant Maughan ignored this complaint because of his close relationship with Defendant Boyce, *id*. at ¶¶ 99-101, and further alleges that Defendants Van Slyke and Metzger suggested that the Kitler Plaintiffs' mother seek psychiatric care for making the report, *id*. at ¶ 155.

Later, in 1997, Plaintiff Alan Kitler met with Defendant Selin, another Bishop with the Church, and "recounted [the abuse] in graphic detail[.]" *Id*. at ¶ 80. Defendant Selin allegedly repudiated the claims of abuse "without a reasonable investigation[,]" called Plaintiff Alan Kitler a liar, and told him not to share the allegations with anyone else. *Id*. Defendant Selin took no action to prevent further abuse, and instead, informed Defendant Boyce that Plaintiff Alan Kitler

had made a report.  *Id.* at ¶¶ 80-81.  In response, Defendant Boyce allegedly "attacked" Plaintiff Alan Kitler, *id.* at ¶ 82, and the abuse of both Kitler Plaintiffs became "rougher and more violent[,]" *id.* at ¶ 103.

Finally, in 2001, Plaintiff Alan Kitler reported the abuse to Defendant Standage, yet another Bishop with the Church.  *Id.* at ¶¶ 103, 157.  Two years later, in 2003, the Church initiated disciplinary proceedings against Defendant Boyce, which were overseen by Defendant Vom Lehn.  *Id.* at ¶¶ 43, 159.  As a result, the Church excommunicated Defendant Boyce.  *Id.*  However, even after his excommunication, Defendant Boyce was allegedly permitted to attend Church services, interact with other members of the Church community, and participate in Church-sponsored activities at the behest of Defendant Vom Lehn.  *Id.* at ¶¶ 30, 107.  The Complaint also alleges, upon information and belief, that the Church gave "no announcements or warnings" to the Church community regarding the basis for Defendant Boyce's excommunication.  *Id.* at ¶ 107.

### iii.  Plaintiff Ballantyne

Plaintiff Kresten Ballantyne alleges that he was sexually abused by Defendant Boyce from 2007 to 2015.  *Id.* at ¶¶ 10, 118.  Prior to living in Schenectady, New York, Plaintiff Ballantyne lived in Washington and attended the ward where Defendant Jenkins was a Bishop.  *Id.* at ¶ 109.  While in Washington, Plaintiff Ballantyne's mother moved her family away from Plaintiff Ballantyne's father and began divorce proceedings.  *Id.* at ¶ 108.  In light of the family's situation, Defendant Jenkins and the Church provided financial assistance to the Ballantyne family and facilitated a move to Schenectady.  *Id*. at ¶¶ 109, 114.

The Ballantynes planned to live with Defendant Boyce in Schenectady.  *Id.* at ¶ 163.  Prior to the move, Defendant Jenkins allegedly had multiple conversations with Defendant Boyce about the Ballantyne family's plans to move in with him.  *Id.* at ¶ 109.  Plaintiffs allege, upon information

and belief, that at the time of these conversations, and prior to the Ballantynes' move to Schenectady, Defendant Jenkins was told by members of Church leadership in Schenectady, including Defendant Standage, that Defendant Boyce was excommunicated from the Church due to allegations of sexual abuse. *Id.* Despite this alleged knowledge, the Complaint further alleges that Defendant Jenkins took no steps to warn Plaintiff Ballantyne or his mother of Defendant Boyce's history of abuse. *Id.* at ¶ 110. Defendant Standage, who allegedly had firsthand knowledge of the accusations against Defendant Boyce, also had more than ten conversations with Plaintiff Ballantyne's mother about the family's move to Schenectady. *Id.* at ¶ 114. Despite knowing of Defendant Boyce's alleged history of sexual abuse, Defendant Standage provided no warning. *Id.*

The Ballantyne family moved across the country to Schenectady, but on the way there, Plaintiff Ballantyne's mother was severely injured in a car accident. *Id.* at ¶ 115. Upon their arrival, Defendant Rubilar, a Bishop, informed the Church that the Ballantynes required additional support due to the accident. *Id.* Defendant Rubilar also "performed religious ceremonies, sacraments, and performed other duties" for the Ballantyne family at Defendant Boyce's home when they arrived but made no mention of Defendant Boyce's alleged history of abuse. *Id.* at ¶¶ 127-28. Instead, the Complaint alleges that the Church "assigned" Defendant Boyce to be Plaintiff Ballantyne's "mentor, caretaker, and father figure[.]" *Id.* at ¶¶ 9, 232.

The Complaint suggests that Plaintiff Ballantyne did not immediately move in with Defendant Boyce, but that upon arrival, Defendant Boyce nevertheless had unfettered access to the family's children. *Id.* at ¶ 117. Eventually, Plaintiff Ballantyne did in fact move in with

Defendant Boyce and Plaintiff Ballantyne's grandmother.[1]  *Id.*  Members of the Church, including Defendant Standage, often visited yet never warned of Defendant Boyce's alleged history of sexual abuse.  *Id.*  The Complaint also suggests that, eventually, the Ballantynes moved to a separate residence, yet Defendant Boyce continued to visit frequently, and the Church remained aware of his visits.  *Id.*

After moving to Schenectady, Plaintiff Ballantyne alleges that he was subjected to sexual abuse "an average of 15-20 times each month for six years of his childhood[.]"  *Id.* at ¶ 118.  The abuse continued into Plaintiff Ballantyne's adulthood and stopped in 2015 when Plaintiff Ballantyne "left to study abroad in China."  *Id.* at ¶ 153.  The alleged abuse consisted of molestation, penetration, and oral copulation, and it often occurred in Defendant Boyce's basement, bedroom, and in other rooms of the house.  *Id.* at ¶¶ 118-19.  As alleged in relation to the Kitler Plaintiffs, the Complaint alleges that Defendant Boyce used coercion, force, manipulation, threats, and discussion of legal connections to convince Plaintiff Ballantyne to stay at Defendant Boyce's home alone and to remain silent about the abuse.  *Id.* at ¶ 122.

The Complaint also alleges that Defendant Boyce used funds given to him by the Church and sourced from his connections in the Church to pay for gifts and necessities for Plaintiff Ballantyne.  *Id.* at ¶¶ 12, 148-49, 164.  Specifically, Plaintiff Ballantyne alleges that Defendant Boyce provided him with a vehicle, a cell phone, credit cards, clothing, video games, jewelry, trips, tickets to sporting events, job opportunities, a pet dog, rent for an apartment in New York City, tuition assistance, and textbooks, all in exchange for sex acts.  *Id.* at ¶¶ 148-53.  The Church

---

[1] The Church asserts that Defendant Boyce was a family member of Plaintiff Ballantyne, a fact which is absent from the Complaint.  *See* Dkt. No. 49-1 at 6-7.  At this stage, the Court may not consider facts outside the allegations in the pleadings.  *See Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988) ("Factual allegations contained in legal briefs or memorandum are ... treated as matters outside the pleading[.]").

allegedly insisted on communicating directly with Defendant Boyce regarding the Ballantyne family's financial needs. *Id.* at ¶ 164. Defendant Boyce also allegedly "monitored and orchestrated" Plaintiff Ballantyne's relationship with the Church community and restricted his ability to speak with his mother. *Id.* at ¶¶ 120-25. The Complaint alleges that the Church benefitted from its relationship with Defendant Boyce by avoiding reputational harm, avoiding the loss of tithes from Church members, and by using Defendant Boyce for free labor and financial bookkeeping related to the Ballantyne family's needs. *Id.* at ¶¶ 203(c)-(d), 204.

In 2015, Plaintiff Ballantyne reported the abuse to law enforcement. *Id.* at ¶ 129. Prosecutors interviewed Plaintiff Ballantyne but declined to prosecute because they said that Plaintiff Ballantyne refused to testify. *Id.* Plaintiff Ballantyne alleges that this is false, and that he was willing to testify. *Id.* The Complaint alleges, upon information and belief, that the Church "obstructed" the investigation to prevent criminal charges. *Id.* at ¶ 130. Later, in 2016, the Complaint alleges that Plaintiff Ballantyne's mother informed Defendant Madsen, a Bishop with the Church, of the abuse of her son. *Id.* at ¶ 131. In response, Defendant Madsen expressed that rather than looking after Plaintiff Ballantyne, Church leadership had been "looking after the girls[,]" to ensure that Defendant Boyce did not sexually abuse her daughters. *Id.*

### B. The Litigation

Prior to the applicable deadline, Plaintiffs entered into an agreement with the Church to extend their opportunity to file suit until September 4, 2024. *Id.* at ¶¶ 15, 211; *see also* Dkt. No. 51-2; 59-3 ("Tolling Agreement").[2] The Tolling Agreement lists the Church's "ecclesiastical

---

[2] Plaintiffs do not dispute that the Court may consider the Tolling Agreement. *See* Dkt. No. 51 at 11 (referring to the agreement as a document "incorporated into the motion"); *see also GMH Capital Partners v. Fitts*, 24-cv-00290 (ER), 2025 WL 950674, at *4 n.3 (S.D.N.Y. Mar. 28, 2025) ("The Court may consider the tolling agreements . . . because [the] claims depend upon the tolling of the statute of limitations, thus making the tolling agreements 'integral'").

officers" as parties to the agreement, but only the attorneys for the Church and for Plaintiffs were signatories, and the Tolling Agreement does not otherwise mention any of the other Defendants by name. *Id.*

Plaintiffs filed suit on September 3, 2024 and asserted the following claims: (1) violations of the TVPRA against the Church, Defendant Boyce, and Does 1-500, (2) sexual abuse of a minor against the Church, Defendant Boyce, and Does 1-500, (3) negligence against all Defendants,[3] (4) negligent infliction of emotional distress against all Defendants, and (5) intentional infliction of emotional distress against the Church, Defendant Boyce, and Defendant Selin.[4]  *See* Dkt. No. 1 at 68, 82, 87, 96, 99, 103.  On October 30, 2024, Defendant Boyce moved to dismiss all the claims against him, arguing that they are barred by the applicable statute of limitations.  Dkt. No. 45.  On November 11, 2024, the Church moved to dismiss the TVPRA claims against it, arguing that the Kitler Plaintiffs' TVPRA claims were barred by a lack of a private right of action and the statute of limitations.  Dkt. No. 49.  The Church also argued that Plaintiffs' allegations against them generally failed to state a plausible TVPRA claim.  *Id.*  Finally, Defendants Rod Standage, Eric Selin, Joshua Madsen, Robert Rubilar, Eugene Jenkins, John Vom Lehn, Clyde Maughan, Van Slyke, and Dolores Metzger ("Individual Defendants") moved to dismiss all the claims against them as time barred.  Dkt. No. 59.

---

[3] In particular, the Kitler Plaintiffs allege negligence claims against the Church, Defendant Maughan, Van Slyke, Metzger, and Selin.  Plaintiff Ballantyne alleges negligence against all Defendants.  *See* Dkt. No. 1 at 87.

[4] In particular, the Kitler Plaintiffs allege intentional infliction of emotional distress against Defendant Selin.  *See* Dkt. No. 1 at 103.  All Plaintiffs allege the claim against Defendants Boyce and the Church.  *Id.* at 99.

## III.    STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of a party's claim for relief.  *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). In considering legal sufficiency, a court must accept as true all well-pled facts in the complaint and draw all reasonable inferences in the pleader's favor.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).   This presumption, however, does not extend to legal conclusions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleadings, the court may consider documents that are "integral" to the pleadings even if they are neither physically attached to, nor incorporated by reference into, the pleadings.  *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers*, 282 F.3d at 152-53).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to sho[w] that the pleader is entitled to relief," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (alteration in original) (quotation omitted).   Under this standard, a pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570.   "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted).   "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Id.* (quoting *Twombly*, 550 U.S. at 557).  Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed," *id.* at 570.

IV.    **DISCUSSION**

**A.  Undisputed Dismissals and Unopposed Claims**

For the sake of clarity, the Court takes note of several claims which Plaintiffs have conceded must be dismissed, as well as several claims that the Church has not moved to dismiss.

First, Plaintiffs "acknowledge that a private right of action under the TVPRA did not exist at the time of [the Kitler Plaintiffs'] abuse and do not contest the Church's motion" to dismiss the Kitler Plaintiffs' TVPRA claims. Dkt. No. 52 at 10.  Plaintiffs' admission that the Kitler Plaintiffs may not bring a TVPRA claim also bars the Kitler Plaintiffs' TVPRA claims against the other Defendants.  Thus, the Court dismisses the Kitler's TVPRA claims in their entirety.  Second, Plaintiffs have stipulated to the dismissal without prejudice of their claims of negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress against Defendant Boyce. Dkt. No. 51 at 6.  Such dismissal is granted.  Third, "Plaintiffs do not oppose the dismissal of Defendant Van Slyke." Dkt. No. 64 at 4 n.1.  Therefore, all claims against Defendant Van Slyke are dismissed.  Finally, the Church solely moved to dismiss the TVPRA claims against it.  Dkt. No. 49-1 at 5.  Thus, the remaining claims against the Church are not at issue.

In sum, the Court proceeds to evaluate whether the following claims should be dismissed: (1) Plaintiffs' sexual abuse of a minor claims against Defendant Boyce and the other state law claims against the remaining Individual Defendants, (2) Plaintiff Ballantyne's TVPRA claim against Defendant Boyce, and (3) Plaintiff Ballantyne's TVPRA claim against the Church.

**B.  State Law Claims and the Tolling Agreement**

Defendant Boyce and the Individual Defendants move to dismiss the remaining state law claims against them as time barred.  *See* Dkt. No. 45-3; Dkt. No. 59-2 at 17.  Plaintiffs argue that Defendant Boyce and the Individual Defendants are bound by the Tolling Agreement, and thus, the claims are timely.  *See* Dkt. No. 51 at 9-12; Dkt. No. 64 at 8-12.  Plaintiffs also argue that

Defendants have not carried their "higher burden" to warrant dismissal based on untimeliness at the motion to dismiss stage. Dkt. No. 51 at 19; Dkt. No. 64 at 14. In turn, Defendant Boyce and the Individual Defendants assert that they are not bound by the Tolling Agreement because they did not sign the agreement, and that the burden is on Plaintiff to show that tolling applies. *See* Dkt. No. 54 at 5-7; Dkt. No. 65 at 5.

"The determination of when a statute of limitations began to run is generally a factual one" that is often inappropriate at the pleading stage. *See D.B. v. Sullivan*, 1:22-cv-282 (MAD/CFH), 2023 WL 2456070, at *7 (N.D.N.Y. Mar. 9, 2023) (citation omitted). "However, 'where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss.'" *Id.* (quoting *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989)). Where claims "are *prima facie* time-barred, the burden is on the plaintiff to 'plausibly alleg[e] that they fall within an exception to the applicable statute of limitations.'" *Roeder v. J.P. Morgan Chase & Co.*, 523 F. Supp. 3d 601, 611 (S.D.N.Y. 2021) (alteration in original) (citation omitted).

### i. *Prima Facie* Untimeliness

Plaintiffs' state law claims against Defendant Boyce and the Individual Defendants are *prima facie* untimely. *Roeder*, 523 F. Supp. 3d at 611. Indeed, Plaintiffs do not dispute that, based purely on the dates of the alleged conduct, their state law claims have expired.[5] *See* Dkt. No. 45-3 at 10-13; Dkt. No. 59-2 at 17. Instead, Plaintiffs mistakenly aver that Defendant Boyce and the Individual Defendants "must prove that on [their] face, Plaintiffs' allegations do not support tolling

---

[5] Nor does the Child Victims Act ("CVA") save Plaintiffs' sexual abuse of a minor claims against Defendant Boyce in the absence of the Tolling Agreement. As Plaintiffs acknowledge in their Complaint, the CVA extended the deadline for filing certain claims until August 14, 2021. *See* Dkt. No. 1 at ¶ 15. Without the Tolling Agreement, Plaintiffs did not meet this deadline.

of the statute." Dkt. No. 51 at 8; Dkt. No. 64 at 12-14. This is a reversal of the applicable burden. Instead, Defendants' burden is to show that the claims are *prima facie* untimely based on the dates of the conduct alleged. *See Ghartey*, 869 F.2d at 162. They have done so.

### ii. Plaintiffs' Burden to Allege Facts Supporting Tolling

Thus, Plaintiffs have "the burden of pleading facts sufficient to establish that the statutes of limitations should be tolled" against Defendant Boyce and the Individual Defendants. *Essex Capital Corp. v. Garipalli*, No. 17 Civ. 6347 (JFK), 2018 WL 6618388, at *2 (S.D.N.Y. Dec. 18, 2018). Plaintiffs point to the Tolling Agreement and the allegations pertaining to it.

The Tolling Agreement, which extends the deadline for filing claims arising out of the alleged childhood abuse experienced by Plaintiffs, was made "by and between" the Church, "its affiliated entities . . . and any ecclesiastical officers . . . and Alan Kitler, Mike Kitler, and Kresten Ballantyne[.]" Dkt. No. 51-2 at 2. Plaintiffs assert that Defendant Boyce and the Individual Defendants are "ecclesiastical officers" under the Tolling Agreement,[6] and therefore are bound. Plaintiffs also contend that, to the extent that the Tolling Agreement is ambiguous as to whether Defendant Boyce and the Individual Defendants are ecclesiastical officers, this Court must construe the term's meaning in favor of Plaintiffs at the motion to dismiss stage because they have not had the opportunity to present evidence as to its meaning. Dkt. No. 51 at 11 (citing *Int'l Audiotext Network, Inc. v. AT&T Co.*, 62 F.3d 69, 72 (2d Cir. 1995) and then citing *Serdarevic v. Centex Homes, LLC*, 760 F. Supp. 2d 322, 333 (S.D.N.Y. 2010) and *Banks v. Corr. Servs. Corp.*, 475 F. Supp. 2d 189, 197 (E.D.N.Y. 2007)); Dkt. No. 64 at 11 (same).

---

[6] The Complaint alleges that Defendant Boyce was "ordained a member of the Aaronic Priesthood . . . and [is a] Deacon, a Teacher, a holder of the Melchizedek Priesthood . . . and was ordained an Elder[.]" Dkt. No. 51 at 10 (citations omitted). The Individual Defendants "are or have been Bishops, Stake Presidents, or Relief Society President within the Church." Dkt. No. 64 at 10.

But Plaintiffs miss a more fundamental issue. The Tolling Agreement does not mention Defendant Boyce nor the Individual Defendants by name, and none are signatories. *See* Dkt. No. 51-2 at 5. Instead, the Tolling Agreement is signed solely by attorneys for the Church, and that signature is offered only on behalf of the Church. *Id.* "It goes without saying that a contract cannot bind a nonparty." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). As a matter of law, a contract's language purporting to cover a nonparty is insufficient, on its own, to establish that the nonparty is indeed bound. *See Davis v. Blige*, 505 F.3d 90, 102-03 (2d Cir. 2007) (noting that the parties to an agreement cannot use the agreement to "take away the legal rights of . . . a nonparty" and that such an agreement "violates the fundamental principle of contract law prohibiting the parties to a contract from binding nonparties"). In light of these principles, where a defendant is "not a direct signatory on the Tolling Agreement . . . . the Tolling Agreement does not apply to claims against [that defendant]." *Commonwealth Land Title Ins. Co. v. ANM Funding LLC*, No. 15-cv-03405, 2016 WL 11263666, at *5 (E.D.N.Y. Sep. 1, 2016), *report and recommendation adopted by* 15-CV-3405 (KAM)(RER), 2016 WL 8672950 (E.D.N.Y. Sep. 30, 2016). Thus, without more, the Tolling Agreement itself does not overcome the facial untimeliness of the state law claims against Defendant Boyce and the Individual Defendants.

Plaintiffs also argue that even though Defendant Boyce and the Individual Defendants are not signatories, they may be properly bound by other principles of contract law such as agency, authorization, or some other legal theory capable of binding non-signatories to a contract. *See* Dkt. No. 64 at 12-14. But Plaintiffs have not plausibly alleged facts in support of such theories. The Complaint merely states, in conclusory terms, that the parties "entered" into the Tolling Agreement. *See* Dkt. No. 1 at ¶¶ 15, 211. Moreover, as discussed, the Tolling Agreement itself contradicts these allegations. *See* Dkt. No. 51-2. Tellingly, the Complaint does not allege that

Defendant Boyce nor any of the Individual Defendants were privy to the conversations leading up to the Tolling Agreement, that they consented to it, or even that they knew it existed.  In the absence of any allegations suggesting that these parties consented to the Tolling Agreement, that they shared counsel at the time the agreement was reached, or that the Church was otherwise authorized to sign on their behalf, Plaintiffs have not plausibly alleged that the state law claims against non-signatories should be tolled by virtue of the Tolling Agreement.[7]

As such, the remaining state law claims must be dismissed against Defendant Boyce and the Individual Defendants without prejudice.[8]  Because no claims remain against the Individual Defendants, they are dismissed from the case entirely.

---

[7] *Martin v. Garrett*, No. 1:17-CV-350-MOC-WCM, 2020 WL 2858237 at *6 (W.D.N.C. June 2, 2020), is not to the contrary.  There, the court denied a motion to dismiss because, unlike here, it found that the plaintiff had marshalled facts supporting her argument that a defendant was bound by a tolling agreement despite being a non-signatory.  *Id.* at *6-7.  Moreover, the Court has identified several out-of-Circuit cases dismissing claims against non-signatories to tolling agreements based on timeliness.  *See, e.g., Hanna v. K-Kel, Inc.*, No. 2:21-cv-00639-JCM-BNW, 2022 WL 181252, at *3 (D. Nev. Jan. 20, 2022) ("Plaintiff did not plead any facts suggesting that the tolling agreement applied to the [unnamed] individual defendants"); *Doe v. Kentucky State Univ.*, No: 3:18-cv-00061-GFVT, 2019 WL 6702541, at *2 (E.D. Ky. Dec. 9, 2019) (plaintiff made "no suggestion in law or fact" that a signatory to a tolling agreement could bind a non-signatory defendant); *SOS Co., Inc. v. E-Collar Tech., Inc.*, No. CV 16-09667-AB (AFMx), 2017 WL 5714716, at *6 (C.D. Cal. Oct. 17, 2017) (plaintiffs "failed to sufficiently allege" the basis for their theory that a non-signatory to a tolling agreement was bound); *Wolper v. Hotel Europe*, 552 F. Supp. 2d 687, 691-92 (N.D. Ohio 2008) (finding a tolling agreement did not apply at the motion to dismiss stage where plaintiff "present[ed] no adequate basis on which [the signatory], could . . . have bound [the defendant]").

[8] Though the Court does not base its decision on such argument, Plaintiffs' brief in opposition to the Individual Defendant's Motion seemingly confirms that Plaintiffs, in fact, have no basis for their assertion that the Individual Defendants authorized the Church to enter into the Tolling Agreement on their behalf.  Plaintiffs argue that discovery could uncover that the Individual Defendants "were aware of the tolling agreement and agreed to it[,]" or that the Church's standard operating procedures might require that Bishops "sign agreements giving the Church's counsel authority to sign documents on their behalf[.]"  Dkt. No. 64 at 13-14.  But such argument amounts to no more than a request for a fishing expedition, with no concrete basis in the facts alleged or in the Tolling Agreement itself, as required where the claims are untimely on the face of the Complaint.

### C.  Plaintiff Ballantyne's TVPRA Claim Against Defendant Boyce

In contrast, the Court finds that Plaintiff Ballantyne's TVPRA claim against Defendant Boyce is timely even without the Tolling Agreement.[9]  A claim under the TVPRA is subject to a 10-year statute of limitations which begins running after *the later of*: 1) the accrual of the cause of action, or 2) when the victim reached the age of 18.  *See* 18 U.S.C. §§ 1595(c)(1)-(2).  For purposes of the TVPRA, a cause of action accrues "on the last date the wrongful conduct occurs" because the statute "involves a continuing tort, and . . . [] a single act occurring within the limitations period will preserve a claim based on all acts that were part of a single pattern."  *Levin v. Sarah Lawrence Coll.*, 747 F. Supp. 3d 645, 670 (S.D.N.Y. 2024) (quoting *Schneider v. OSG, LLC*, 22-CV-7686 (AMD) (VMS), 2024 WL 1308690, at *5 (E.D.N.Y. Mar. 27, 2024)) (internal quotation marks omitted).

Here, Plaintiff Ballantyne alleges that Defendant Boyce abused him from 2007 to 2015.  *See* Dkt. No. 1 at ¶ 10.  Plaintiff Ballantyne turned 18 in either 2012 or 2013.  *Id.* at ¶¶ 118, 211 (alleging inconsistent dates).  Because the last date of alleged abuse and trafficking in 2015 is later than Plaintiff Ballantyne's 18th birthday, the 10-year statute of limitations began running on Plaintiff Ballantyne's TVPRA claim at some point in 2015.  Plaintiff Ballantyne brought the TVPRA claim in September 2024, less than 10 years after the claim accrued.  Therefore, as alleged, Plaintiff Ballantyne's TVPRA claim is not time barred.

Defendant argues that "by [Plaintiffs'] own admission," Plaintiff Ballantyne's TVPRA claim is time barred.  Dkt. No. 54 at 11.  Indeed, the Complaint does directly allege that the claim "would be time barred . . . after July 7, 2022" without the Tolling Agreement.  Dkt. No. 1 at ¶ 211.

---

[9] Defendant Boyce does not oppose Plaintiff Ballantyne's TVPRA claim against him on the merits. Therefore, for purposes of this decision, the Court assumes without holding that Plaintiff Ballantyne plausibly alleges a TVPRA claim against Defendant Boyce so long as it is timely.

But on a motion to dismiss, the Court must consider the facts in the Complaint in "the light most favorable to [Plaintiffs]." *DeMasi v. Benefico*, 567 F. Supp. 2d 449, 452-53 (S.D.N.Y. 2008) (citations omitted).  Given that the Complaint also plausibly alleges that the conduct at the center of the alleged trafficking continued until 2015, at this stage, the Court must deny the motion to dismiss Plaintiff Ballantyne's TVPRA claim based on the statute of limitations.  Moreover, the Complaint's assertion that Plaintiff Ballantyne's TVPRA claims were time barred as of July 7, 2022 is a legal conclusion, not an assertion of fact.  Thus, the Court need not accept the assertion as true. *See Ashcroft*, 556 U.S. at 678.

### D.  Plaintiff Ballantyne's TVPRA Claims Against the Church

Finally, the Court turns to whether Plaintiff Ballantyne has pled a plausible claim under the TVPRA against the Church.  *See* Dkt. No. 49-1 at 11-14.

Part of the TVPRA, 18 U.S.C. § 1591(a) ("§ 1591(a)"), imposes criminal liability upon whoever knowingly: "recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act [previously described]," with knowledge, or a reckless disregard for the fact, "that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act[.]"  The TVPRA also assigns civil liability, using language which closely (but not exactly) tracks the criminal statute:

> "[a]n individual who is a victim of a violation of [18 U.S.C. § 1591(a)] may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter)[.]"

18 U.S.C. § 1595(a) ("§ 1595(a)").  Pursuant to the language of the statute, the TVPRA creates two forms of civil claims: beneficiary liability and perpetrator liability.  *See Doe (G.N.C.) v.*

*Uniquest Hosp., LLC*, 23-cv-7980 (PKC), 2024 WL 4149251, at *2 (S.D.N.Y. Sep. 11, 2024).
Plaintiff Ballantyne brings both claims against the Church.

### i.   Beneficiary Liability

To state a claim for beneficiary liability, Plaintiffs must assert the following: "(1) a venture
has engaged in [a violation of § 1591(a)], (2) the defendant knew or should have known that the
venture had violated [§ 1591(a)], (3) the defendant participated in that venture, and (4) the
defendant knowingly benefited from its participation." *Levin*, 747 F. Supp. 3d at 679 (quoting
*G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 565 (7th Cir. 2023)); *see also S.J. v. Choice Hotels
Int'l, Inc.*, 473 F. Supp. 3d 147, 152 (E.D.N.Y. 2020) (citing *A.C. v. Red Roof Inns, Inc.*, No. 2:19-
cv-4965, 2020 WL 3256261, at *4 (S.D. Ohio June 16, 2020)).   The Church argues that it is not
subject to beneficiary liability because the Complaint fails to allege the final three elements: that
it "knew or should have known" of the alleged trafficking, that it "participated" in a venture, and
that it "knowingly benefited" from the alleged participation.  *See* Dkt. No. 49-1 at 11-14; Dkt. No.
60 at 10-14.  The Court disagrees and finds that Plaintiff Ballantyne has plausibly stated a claim
for beneficiary liability against the Church.

### 1.   Knew or Should Have Known

First, the Court finds that Plaintiff Ballantyne has plausibly alleged the second element of
the beneficiary claim.  In relevant part, the statute assigns liability to an entity that "*knew or should
have known* [a venture] has engaged in [a violation of § 1591(a)]."  18 U.S.C. § 1595(a) (emphasis
added); *see also Levin*, 747 F. Supp. at 679.  The Church's arguments to the contrary confuse the
appropriate standard.  Regardless of the applicable standard, however, the allegations are sufficient
to survive dismissal.

The Church argues that the Complaint fails to allege that it "*actually knew* that [Defendant]

19

Boyce was 'trafficking' [Plaintiff] Ballantyne." Dkt. No. 60 at 11 (emphasis added). In doing so, the Church relies on *Noble v. Weinstein*, 335 F. Supp. 3d 504, 523 (S.D.N.Y. 2018). *Id.* at 10. There, the court found that a defendant was not subject to civil beneficiary liability under the TVPRA, in part, because the complaint did not assert that the defendant had knowledge of the sex trafficking itself. *Id.* at 524. In reaching its decision, the court in *Noble* relied on *U.S. v. Afyare*, a criminal case. 632 F. App'x 272, 282-86 (6th Cir. 2016).

But courts since *Noble* have criticized the knowledge standard applied there as failing to account for the differences in criminal and civil liability under the TVPRA. *See, e.g., Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d at 153; *Salesforce.com, Inc.*, 76 F.4th at 558 n.14; *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 724 (11th Cir. 2021); *E.S. v. Best W. Int'l, Inc.*, 510 F. Supp. 3d 420, 427 (N.D. Tex. 2021) (collecting cases). Specifically, the related criminal statute, § 1591, defines "participation in a venture[,]" a separate element of the offense, to mean "*knowingly* assisting, supporting or facilitating." § 1591(e)(4) (emphasis added). In contrast, "participation in a venture" is not defined in the civil portion of the statute, § 1595(a).[10] Moreover, the civil portion of the statute, but not the criminal portion, explicitly assigns liability where the defendant "knew or should have known" of the trafficking. *Id.* Considering these distinctions, courts have concluded that Congress intended "to broaden the behavior that can form the basis of civil liability." *Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d at 153 (quoting *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 964 (S.D. Ohio 2019)); *Doe #1 v. MG Freesites, LTD*, 676 F. Supp. 3d 1136, 1155 (N.D. Ala. 2022) ("[W]hile sections 1591 and 1595 both include provisions for beneficiary

---

[10] Courts assessing civil TVPRA claims often discuss the knowledge requirement under the "participation" element of the claim, as the Church has done in its brief, because of the language in the related criminal statute. Considering the distinction between civil and criminal liability discussed herein, and to avoid further conflation of the elements in the civil beneficiary context, the Court addresses the "participation" and "knew or should have known" elements separately.

liability, the criminal statute requires that the defendant have actual knowledge of sex trafficking at issue while the civil statute allows a plaintiff to plead that the defendant merely had constructive knowledge.").  Indeed, were civil plaintiffs required to allege that beneficiary defendants *actually knew* of the alleged trafficking, as *Noble* purports, such a requirement would render meaningless Section 1595(a)'s unique "knew or should have known" language.  *See, e.g., A.B. v. Hilton Worldwide Holdings, Inc.*, 484 F. Supp. 3d 921, 935 (D. Ore. 2020) (agreeing with the "[s]everal other courts [which] have rejected" the *Noble* approach); *see also A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 188 (E.D. Pa. 2020) ("The court in *Noble* did not address the 'knew or should have known' language[.]"); *J.C. v. Choice Hotels Int'l, Inc.*, No. 20-cv-00155-WHO, 2020 WL 6318707, at *4 (N.D. Cal. Oct. 28, 2020) ("[Plaintiff] need not allege that defendants had actual knowledge of her sex trafficking[.]"); *see also Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 167 n.3 (S.D.N.Y. 2019) (noting that the current version of the civil liability provision "add[ed] a constructive knowledge alternative").

The Court agrees with these cases and finds that, to assert civil beneficiary liability under the TVPRA, Plaintiffs need not allege that the Church "knew" that Defendant Boyce was trafficking Plaintiff Ballantyne.  Instead, allegations plausibly suggesting that the Church "should have known," or had constructive knowledge of, the alleged trafficking are enough.

"Constructive knowledge is an intensely fact-based assessment, and obviously presents a meaningfully lower hurdle than a requirement to show actual knowledge." *Edmondson v. Raniere*, 751 F. Supp. 3d 136, 181 (E.D.N.Y. 2024) (assessing TVPRA beneficiary claims against NXIVM). Plaintiff Ballantyne meets this burden.  First, the Complaint alleges, upon information and belief, that Defendant Boyce "was previously disciplined in Utah for sexually assaulting track athletes" and that the Church "decided to move [Defendant Boyce] from Utah to Schenectady, New York,

rather than pursue legal or disciplinary action against him." Dkt. No. 1 at ¶¶ 27, 161. The Complaint also alleges that the Church was aware of Defendant Boyce's alleged sexual abuse of the Kitler Plaintiffs in strikingly similar circumstances, and that the Church found those allegations meritorious enough to warrant excommunication. *Id.* at ¶¶ 104-05. Moreover, the Complaint alleges that members of the Church leadership observed worrisome behavior during visits between Defendant Boyce and Plaintiff Ballantyne, including that Plaintiff Ballantyne was "forced" to sleep on a couch on a separate floor from his sisters to facilitate nightly abuse and that Plaintiff Ballantyne was shown "extreme favoritism." *Id.* at ¶ 166. These visits would have presented red flags "for any reasonable person[,]" according to the Complaint. *Id.* Moreover, the Church's own funds were allegedly used to purchase lavish gifts for Plaintiff Ballantyne, including a car, jewelry, and rent for an apartment in New York. *Id.* at ¶¶ 148-49. The Complaint also alleges that after being told of the abuse, Church leadership admitted that they had considered the possibility that Defendant Boyce was abusing Plaintiff Ballantyne's sisters, indicating an active awareness of the danger posed by Defendant Boyce to the Ballantyne family. *Id.* at ¶ 131. Drawing all reasonable inferences from these allegations, the Complaint plausibly alleges, at the very least, that the Church should have known that Defendant Boyce was trafficking Plaintiff Ballantyne by providing gifts in exchange for sexual acts.

However, even under the heightened standard applied in *Noble*, the Court would deny dismissal. Certain states of mind such as knowledge "may be alleged generally." Fed. R. Civ. P. 9(b); *see also Doe v. Hotels*, No: 6:23-cv-1012-JSS-LHP, 2024 WL 2955728, at *5 (M.D. Fla. June 12, 2024) (finding complaint adequately pled actual knowledge where court could draw a reasonable inference from circumstantial allegations). The *Noble* court dismissed the relevant claim because, there, the complaint "d[id] not allege that [defendant] was present for any of the

alleged assaults, was told about them before or after they occurred . . . nor d[id] it allege anything similar, which might show knowledge[.]"  335 F. Supp. 3d at 524 (citation omitted).  Based on these shortcomings, the court found that there were insufficient facts from which it could reasonably infer knowledge.  *Id.* at 525.  Here, however, the Complaint directly alleges upon information and belief that the Church "had actual . . . knowledge of [Defendant Boyce's] sexual abuse and sex trafficking of [Plaintiff Ballantyne][.]"  Dkt. No. 1 at ¶ 167.  The Complaint is also filled with factual allegations which strongly support this general allegation and permit the Court to draw the reasonable inference of the Church's knowledge, such as those discussed above.  To reiterate: the Church is alleged to have excommunicated Defendant Boyce for sexually abusing the Kitler Plaintiffs a few years prior to "assign[ing]" Defendant Boyce to be Plaintiff Ballantyne's "mentor, caretaker, and father figure[.]"  *Id.* at ¶ 232.  The Church is also alleged to have admitted that it was actively concerned about Defendant Boyce's relationship with other members of the Ballantyne family.  *Id.* at ¶ 131.  As such, even if actual knowledge were required, the Court finds that the allegations, at this stage, not only plausibly suggest constructive knowledge, but also support a reasonable inference that the Church possessed actual knowledge.

### 2.      Participation

Next, the Complaint plausibly asserts that the Church's conduct satisfies the third element of the claim.  The statute provides, in relevant part, that "whoever . . . *participat[es]* in a venture" engaged in sex trafficking may be held liable.  18 U.S.C. § 1595(a) (emphasis added).[11]  "[T]he

---

[11] "Venture" is defined extremely broadly in the context of the TVPRA to mean "any group of two or more individuals associated in fact, whether or not a legal entity."  *Noble*, 335 F. Supp. 3d at 524 (quoting § 1591(e)(5)).  Though that definition comes from the criminal portion of the statute, courts have recognized that "it [is] safe to assume that Congress did not intend 'venture' in [the civil statute] to be any more demanding[.]"  *Salesforce.com, Inc.*, 76 F.4th at 554.  Defendant Boyce's assigned position as an alleged liaison between the Church and the Ballantyne family, and the Church's longstanding relationship with Defendant Boyce, fulfill this requirement.

Second Circuit has not conclusively determined the meaning of 'participation'" in relation to civil liability under the TVPRA. *Jones v. Combs*, 24-CV-1457 (JPO), 2025 WL 896829, at *9 (S.D.N.Y. Mar. 24, 2025). Other courts have found that "participation in a venture" in the civil liability context requires no more than "assisting, supporting, or facilitating" a venture that engages in sex trafficking. *Salesforce.com, Inc.*, 76 F.4th at 559 (citing 18 U.S.C. § 1591(e)(4)). But courts in this Circuit have also generally required more than allegations of "passive facilitation." *Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 405 (S.D.N.Y. 2023) (assuming participation requires more than "passive facilitation"); *Noble*, 335 F. Supp. 3d at 524 (stating that allegations that a defendant "turn[ed] a blind eye" are insufficient (citation omitted)).

For example, in *Jones*, plaintiffs alleged that an individual, Sean Combs, was a direct perpetrator under the TVPRA, and that his company Combs Global Enterprises was liable through the TVPRA's provisions assigning beneficiary liability. *Jones*, 2025 WL 896829, at *10. The court dismissed the beneficiary claim because plaintiff "only discusse[d] Combs Global in laundry lists alongside [other defendants]" and had not "identif[ied] any distinct actions taken by Combs Global to either facilitate or cover up Combs's conduct." *Id.* However, in dismissing plaintiff's claim, the Court found it relevant that the plaintiff had failed to "identify any funds contributed by [the alleged beneficiary] that [the perpetrator] used to commit the alleged misconduct[.]" *Id.* Thus, drawing on *Jones*, the provision of funds which are ultimately used to commit sex trafficking may support a finding of participation under the TVPRA.

Additionally, in *Deutsche Bank Aktiengesellschaft*, an alleged beneficiary, a bank, argued that the complaint alleged no more than passive facilitation because the bank "merely provided their usual banking services to [Jeffrey Epstein] and his affiliated entities." 671 F. Supp. 3d at 405. But the court found that, instead, the complaint adequately alleged active "engagement" with

the sex trafficking venture by alleging that the bank "assisted with 'structuring' cash withdrawals so that those withdrawals would not appear suspicious" and "delayed filing suspicious activity reports concerning Epstein's activities." *Id.* In doing so, the court noted that "even if it is true that 'active participation' in a sex-trafficking venture requires some special tailoring of one's services to that venture," the complaint alleged such participation. Therefore, *Deutsche Bank Aktiengesellschaft* stands for the proposition that a defendant's efforts to conceal a perpetrator's engagement in sex trafficking, or the provision of other forms of "tailor[ed]" services to a venture, may constitute an active and specific form of "participation" under the TVPRA.

In light of these authorities, the Court finds that the Church is adequately alleged to have "participated" in the venture engaged in sex trafficking. Here, the Church allegedly failed to warn the Ballantyne family of Defendant Boyce's history, Dkt. No. 1 at ¶ 114, assigned Defendant Boyce to be Plaintiff Ballantyne's caretaker, *id.* at ¶ 199, "insisted upon communicating directly with excommunicated [Defendant Boyce] regarding the family's needs," *id.* at ¶ 164, and provided funds for a car and other gifts which Defendant Boyce allegedly exchanged for the performance of sex acts by Plaintiff Ballantyne, *id.* at ¶ 149. These acts were taken in spite of Defendant Boyce's excommunication, conduct which the Complaint alleges "contradicted" the Church's usual treatment of excommunicated members. *Id.* at ¶ 164. Finally, the Complaint alleges, upon information and belief, that the Church engaged in the cover-up of Defendant Boyce's sex trafficking of Plaintiff Ballantyne, specifically by intervening in a police investigation. *Id.* at ¶ 130.[12] Through all of these acts, the Church allegedly empowered Defendant Boyce as a seemingly

---

[12] While alleged upon information and belief, the allegations of obstruction are (at least somewhat) supported by allegations that the investigation was ended for allegedly false reasons, as well as by allegations that Defendant Boyce had connections to the law enforcement community and that Church leadership previously told Alan Kitler not to report his abuse to anyone, including the police. *Id.* at ¶¶ 122, 129, 283.

indispensable figure in Plaintiff Ballantyne's life, provided the means and funds through which Defendant Boyce engaged in sex trafficking, and hindered an investigation into the alleged trafficking. *See Jones*, 2025 WL 896829, at *10; *Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d at 405. Taking these allegations together, reading them in the light most favorable to Plaintiff Ballantyne, and drawing all reasonable inferences, the Court finds that the Complaint does more than allege a passive acquiescence to Defendant Boyce's conduct; it plausibly alleges that the Church took active steps in the alleged venture which differed from the Church's ordinary conduct and treatment of other members of the Church. Under any recognized definition of "participation," Plaintiff Ballantyne has met his burden at this stage.

### 3.    Knowing Benefit

Finally, Plaintiff Ballantyne has plausibly alleged the fourth element. In relevant part, the statute provides that "whoever *knowingly benefits*, or attempts or conspires to benefit, financially or by receiving anything of value from participation . . ." may be held liable. *See* § 1595(a) (emphasis added). At base, the parties dispute two aspects of the "knowingly benefits" element: 1) whether it requires a causal relationship between the purported benefit and the defendant's participation, and 2) what form "anything of value" may take.

As to the first issue, the Church characterizes the Complaint as alleging "only that the Church concealed [Defendant] Boyce's abuse because some Church members might stop giving tithes[,]" and asserts that such a benefit is insufficiently causally related to the alleged participation in the sex trafficking venture. Dkt. No. 49-1 at 13-14. The Church argues that assigning it liability would, in effect, create a system in which "any organization that covered up sexual abuse to protect its reputation would be guilty of sex trafficking." *Id.* at 14. In response, Plaintiff Ballantyne argues that a direct causal relationship between participation and benefit is not required. Dkt. No. 52 at

17.

The Court disagrees with the Church's interpretation of the "knowingly benefits" language of the TVPRA.  In essence, the Church argues that "knowingly benefits" requires allegations of a *quid pro quo*.  *See* Dkt. No. 49-1 at 14 (asserting that the Complaint must allege that "the Church participated in a sex-trafficking venture for the purpose of *gaining a new benefit*" (emphasis in original)).  This reading has at least some support in cases before the Southern District of New York.  *See, e.g., Geiss*, 383 F. Supp. 3d at 169 ("The controlling question, however, is whether H. Weinstein provided any of those benefits to TWC *because of* TWC's facilitation of H. Weinstein's sexual misconduct." (emphasis in original)); *Canosa v. Ziff*, 18 Civ. 4115 (PAE), 2019 WL 498865, at *24 (S.D.N.Y. Jan. 28, 2019).

But, again, most district courts, and several Circuits, have criticized this approach and applied a broader interpretation.  Indeed, a heightened "benefit" requirement requiring a causal connection "has been rejected by virtually every other court."  *Salesforce.com, Inc.*, 76 F. 4th at 565 n.20 (listing cases); *see also Ricchio v. McLean*, 853 F.3d 553, 556 (1st Cir. 2017) (applying broad definition of benefit); *Red Roof Inns, Inc.*, 21 F.4th at 723-24 (applying the same).  These courts point to the plain language of Section 1595(a), which imposes liability on "whoever knowingly benefits, financially or by receiving anything of value[.]"  18 U.S.C. § 1595(a).  The statute "says nothing about why the sex-trafficker provides any benefit to the participant-defendant[,]" nor does it "even require that the sex trafficker itself or himself provide any benefit." *Salesforce.com, Inc.*, 76 F.4th at 565.  Instead, the statute "uses the passive voice[,]" which, read plainly, requires no more than allegations that a defendant "was aware that it was benefitting in some way from its participation in the venture." *Id.* at 564.  Thus, in contrast to the interpretation advocated for by the Church, these courts find that "the benefit need not take the form of 'profits'

27

that are 'the specific result' of a sex-trafficking venture." *Id.* at 564.

Tellingly, other decisions in the Southern District of New York have seemingly cast doubt on the need for a causal connection. In *Canosa*, despite finding that the allegations were sufficient even under the heightened standard, the court seemed to question whether a causal relationship between the alleged participation and benefit was required. 2019 WL 498865, at *24 (noting that the causal connection requirement came from "an unreported decision from the Western District of Arkansas"). Moreover, in *Deutsche Bank Aktiengesellschaft*, the district court noted it was "not convinced that the benefit element should be read" to mandate a causal relationship between participation and the receipt of a benefit. 671 F. Supp. 3d at 408.

In light of these authorities, the Court finds that Plaintiff Ballantyne need not allege an implicit *quid pro quo* or causal relationship to satisfy the "knowingly benefits" requirement.

As to the second issue, the form of the benefit, Plaintiff Ballantyne argues that the Complaint alleges several forms of benefit to the Church, including the avoidance of reputational harm and losses in tithes and voluntary contributions, Defendant Boyce's financial and fundraising connections in the area, free labor by Defendant Boyce, and protection from substantial civil and criminal liability. Dkt. No. 52 at 17. The Church, in turn, argues that the *retention* of tithes and the Church's reputation is insufficient, because such allegations do not amount to a "new benefit." Dkt. No. 49-1 at 14.

But the Court need not reach the Church's argument. By assigning Defendant Boyce to the caretaking of Plaintiff Ballantyne's family, and by using Defendant Boyce to assist in "financial bookkeeping or similar services," the Church is alleged to have gained the benefit of assistance in executing functions of the Church. Dkt. No. 1 at ¶ 203(c)-(d). Though seemingly an unwise and uneven exchange given the Church's resources and the risk which came with the

Church's relationship with Defendant Boyce, Defendant Boyce's assistance satisfies the "anything of value" language of the statute. 18 U.S.C. § 1595(a); *see Doe v. Warren & Baram Mgmt. LLC*, 20-CV-9522 (ER) (VF), 2024 WL 2941222, at *5 (S.D.N.Y. May 3, 2024) ("Courts have consistently held that 'anything of value' encompasses more than simply monetary exchanges." (quotation marks and citation omitted)). Moreover, there can be no question that the Church "knowingly" received this benefit under the standard espoused above; the Complaint alleges that the Church affirmatively assigned Defendant Boyce to provide these services. Therefore, Plaintiff Ballantyne has plausibly alleged that the Church "knowingly benefitted."

### ii. Perpetrator Liability

Having found that Plaintiff has plausibly alleged a beneficiary claim, the Court also finds that Plaintiff Ballantyne plausibly asserts a claim for direct perpetrator liability against the Church. As discussed above, the TVPRA establishes civil liability against not only whoever "should have known" they were benefitting from a violation of the criminal statute, but also the "perpetrator" of the crime directly. § 1595(a). To state a claim for perpetrator liability under the TVPRA, Plaintiff Ballantyne must allege that the Church itself satisfied the requirements of the criminal statute by knowingly "recruit[ing], entic[ing], harbor[ing], transport[ing], provid[ing], obtain[ing], advertis[ing], maintain[ing], patroniz[ing], or solicit[ing] by any means a person . . . knowing, or, . . . in reckless disregard of the fact, . . . that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act." *St. Louis v. Perlitz*, No. 3:13-CV-1132 (RNC), 2016 WL 1408076, at *1 (D. Conn. Apr. 8, 2016) (quoting § 1591(a)(1)). The "knowing or reckless disregard" language requires more than the "knew or should have known" element relevant to a beneficiary liability claim. *Doe (G.N.C.)*, 2024 WL 4149251, at *3 (finding that a plaintiff had pled a beneficiary claim but not a perpetrator claim).

Thus, in the context of claims involving minors, perpetrator liability has two requirements: 1) that the defendant knowingly took one of the actions listed in the statute, and 2) that the defendant did so while knowing, or in reckless disregard of the fact, that the person subject to their action had not attained the age of 18 years and would be caused to engage in commercial sex acts. The Court addresses each requirement in turn.

First, the Court finds that the Church is alleged to have recruited, enticed, and provided Plaintiff Ballantyne.[13]  "The statute does not define terms like 'entice' or 'recruit,' so courts have given those terms their ordinary meaning, holding that they cover conduct ranging from 'attracting [a] victim by offering something that arouses hope or desire' to 'somehow secur[ing] the services of [a] victim[].'"  *Jones*, 2025 WL 896829, at *6 (brackets in original) (quoting *Ardolf v. Weber*, 332 F.R.D. 467, 474 (S.D.N.Y. 2019)).  The Complaint alleges that Plaintiff Ballantyne's family reached out to the Church for assistance during a tumultuous period.  Dkt. No. 1 at ¶ 108-09, 114. The Church allegedly had several conversations with the Ballantyne family and Defendant Boyce to "facilitate" the family's transition to Schenectady.  *Id.* at ¶¶ 109-114.  The Church also provided financial assistance to the family upon their move and channeled that assistance through Defendant Boyce.  *Id.* at ¶ 171.  More than that, the Church "assigned" Defendant Boyce to be Plaintiff Ballantyne's "mentor, caretaker, and father figure" and insisted on interacting with Plaintiff Ballantyne through Defendant Boyce.  Dkt. No. 1 at ¶¶ 164, 232.  Drawing all reasonable inferences, the Complaint alleges that the Church acted to intimately connect Plaintiff Ballantyne to Defendant Boyce upon his move to Schenectady and acted to ensure that the connection remained intact by channeling Plaintiff Ballantyne's access to resources through Defendant Boyce.

---

[13] The Court finds that the Complaint does not plausibly allege that the Church committed any other act listed in the statute.

Thus, giving the words recruit, entice, and provide their plain meaning, the Complaint plausibly alleges that the Church knowingly undertook these acts.

Second, the Court finds that the Complaint plausibly alleges that the Church knew of or recklessly disregarded the fact that Plaintiff Ballantyne would be caused to engage in commercial sex acts. It goes without saying that the acts taken by the Church, alone, are insufficient to establish liability. Indeed, the Church asserts that "[a] church providing financial support to a needy family is hardly the hallmark of a trafficking purpose." Dkt. No. 60 at 9. But the Church misses the point. When these seemingly innocuous acts are paired with the Church's knowledge, or reckless disregard of the fact that a minor "will be caused to engage in a commercial sex act" because of those acts, liability attaches. That the Church's alleged acts took the form of what might otherwise be commendable behavior does not protect the Church from liability. This Court has already found the Complaint plausibly alleges that the Church knew of the alleged sex trafficking, and therefore, the "recklessly disregarded" standard is necessarily met. As discussed above in relation to beneficiary liability, the Complaint contains several allegations which, taken together, permit the Court to draw the reasonable inference of knowledge at the time the Church recruited, enticed, and provided Plaintiff Ballantyne. Thus, at this stage, the allegations are sufficient to assert a claim for direct perpetrator liability.

The Church makes several arguments in support of dismissing the perpetrator liability claim, but the Courts finds each unavailing.

First, the Church argues that "[t]he Complaint provides no basis for a plausible inference that the Church provided financial assistance to [Plaintiff Ballantyne] *for the purpose of* recruiting him into a sex scheme." *Id.* at 9 (emphasis added). But that is not what the statute requires. Instead, "Plaintiffs must allege that [the Church] had an *awareness or understanding*" that a minor

would be caused to engage in commercial sex acts. *Doe v. Jackson*, 23-cv-04910 (ALC), 2025 WL 753949, at *4 (S.D.N.Y. Mar. 10, 2025) (emphasis added) (citations omitted). Thus, it is enough that the Church is plausibly alleged to have known, or recklessly disregarded the fact, that Plaintiff Ballantyne would be caused to engage in commercial sex acts because of their actions.

Second, the Church also argues that it did not know that "[Defendant] Boyce would use threats or force to coerce Ballantyne to perform sex acts." Dkt. No. 60 at 9. But, again, the Church misreads the statute. The relevant portion of the TVPRA assigns liability in two distinct scenarios. First, the statute assigns liability to perpetrators with knowledge, or in reckless disregard of the fact, that "means of force, threats of force, fraud, [or] coercion . . . will be used to cause the [victim] to engage in a commercial act[.]"  § 1591(a). Second, and separately, the statute also assigns liability to perpetrators with knowledge, or in reckless disregard of the fact, that "the person has not attained the age of 18 years and will be caused to engage in a commercial sex act[.]" *Id.* Thus, where the alleged victim is a minor, the TVPRA does not require that a perpetrator have knowledge that specific means, such as force and threats, will be used to coerce the victim into performing sexual acts. *See A.B. v. Interstate Mgmt. Co., LLC*, 746 F. Supp. 3d 997, 1005 n.2 (D. Or. 2024). Instead, where the victim is a minor, the perpetrator need only have knowledge that the victim will be caused, by any means, to engage in commercial sex acts. Therefore, the Church's argument that it did not know that Defendant Boyce would use threats or force specifically to cause the performance of commercial sex acts is unavailing.

However, even ignoring that Plaintiff Ballantyne was a minor through the duration of most of the allegations, at this stage, the Court finds that the Complaint plausibly alleges that the Church knew, or recklessly disregarded the fact, that force, threats of force, fraud, or coercion were being used to cause Plaintiff Ballantyne to engage in commercial sex acts. The Complaint alleges that,

prior to the abuse of Plaintiff Ballantyne, members of the Church were told in "graphic detail" about the Kitler Plaintiffs' abuse, including that Defendant Boyce "violently sodomized, groped, fondled, kissed, orally copulated, and masturbated" the Kitler Plaintiffs. Dkt. No. 1 at ¶ 80. Thus, the Church was not only aware of the fact that Defendant Boyce had a history of sexual abuse but was also allegedly aware that Defendant Boyce used violence to facilitate that abuse. While these reports pertained to the Kitler Plaintiffs and not Plaintiff Ballantyne, at this stage, the Court finds that the allegations, read as a whole, are enough to plausibly suggest that the Church recklessly disregarded the fact of the specific means by which Plaintiff Ballantyne was caused to engage in sex acts. Therefore, to the extent that the Complaint alleges a perpetrator claim in relation to trafficking which occurred after Plaintiff Ballantyne turned 18, the Court finds such a claim is adequately alleged.

Third, the Church marshals case law to argue that entities are rarely held liable as perpetrators, rather than beneficiaries, under the TVPRA. Dkt. No. 60 at 10. In *Doe (G.N.C.) v. Uniquest Hosp., LLC*, the court refused to assign perpetrator liability to a hotel which had hosted trafficking activity. 2024 WL 4149251, at *2. The court noted that while plaintiff alleged certain "red flags" which might have indicated to the hotel that trafficking was occurring and provided a basis for beneficiary liability, such "red flags" were insufficient to establish the knowledge needed to succeed on a perpetrator liability claim because they were "consistent with both sex trafficking and the typical behavior of ordinary guests staying at a low-end hotel" and "prostitution[.]" *Id.* at *3. But here, Plaintiff Ballantyne does not rely on mere indicators of potential trafficking which could be misinterpreted. Of course, observing a close relationship between a member of the Church and a young boy does not, alone, provide definitive cause for concern. But observing a close relationship between a young boy and a member of the Church *who has been*

*excommunicated for sexually abusing boys in a strikingly similar situation* should, in fact, provide serious cause for concern.  The Complaint also alleges that the Church *actually expressed* their concern that Defendant Boyce might abuse Plaintiff Ballantyne's sisters.  *See* Dkt. No. 1 at ¶ 131. These are not muddled signals.  Instead, the collective warning signs are alleged to have pointed to one, seemingly inexorable conclusion: that Defendant Boyce was trafficking Plaintiff Ballantyne.

Second, contrary to the Church's position, the court's decision in *J.M. v. Choice Hotels Int'l, Inc.* supports a finding that the Church is alleged to have acted as a perpetrator.  No. 2:22-cv-00672-KJM-JDP, 2023 WL 3456619 (E.D. Ca. May 15, 2023).  There, the court noted that hotel staff observed visible signs of injury on the victim, took cash payments from the victim, rented the victim rooms away from other guests, told guests to "hurry up" when they entered and left the room, and cleaned up "unusual numbers of condoms" and drug paraphernalia.  In light of these allegations, the Court found the hotel was alleged to have the requisite knowledge for imposing perpetrator liability.  *Id.* at \*3.  The Court finds no great distance between the weight of the signals of knowledge alleged in *Choice Hotels* and the signals alleged in this case.  If anything, the excommunication of Defendant Boyce more deeply implicates the Church's knowledge.  A hotel might be generally aware of a risk that it will be used for trafficking.  But to know that a particular guest is engaged in trafficking, a hotel must amass several observations to make the leap from generalized suspicion to individualized knowledge.  Put differently, a hotel might know the shape of the puzzle, but it still must put specific pieces together to have a complete and specific picture of the alleged trafficking.  In *Choice Hotels*, the court found that the hotel had plenty of pieces of the puzzle with which to work, and that the hotel's alleged conduct confirmed their understanding of the finished picture.  2023 WL 3456619, at \*3.  Here, the Complaint alleges that

a virtually complete puzzle was available to the Church from the start.  Not only does the Complaint plausibly suggest that the Church was generally aware of the prior abuse of young boys in the Church, but it was also allegedly aware of the *specific* risk posed by Defendant Boyce. Additionally, as with the allegations in *Choice Hotels*, the Church's alleged actions seemingly confirmed their understanding of the finished picture.  *See* Dkt. No. 1 at ¶ 131 (alleging that the Church confirmed that it was concerned about Defendant Boyce).

Therefore, Plaintiff Ballantyne has plausibly alleged the elements of a perpetrator liability claim, and the Court denies the Church's motion to dismiss on these grounds.

### E.  Requests to Amend Pleadings

At various points in their responses to Defendants' Motions, Plaintiffs request leave to amend the Complaint in the event of dismissal.  *See* Dkt. No. 51 at 16-20; Dkt. No. 52 at 27-29. Rule 15(a)(2) of the Federal Rules of Civil Procedures provides that plaintiffs should be given leave to amend "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Therefore, "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead.  Although leave to replead is within the discretion of the district court, refusal to grant it without any justifying reason is an abuse of discretion."  *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (internal citations omitted).  Leave to replead may be denied based on "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., futility of amendment, etc." *Ruotolo v. City of New York*, 514 F. 3d 184, 191 (2d Cir. 2008) (internal quotation marks and citation omitted).  "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure."  *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)

(citing *Cortec Indus., Inc.*, 949 F.2d at 50).  In making a futility determination, the court must "consider 'the proposed amendment[s] . . . along with the remainder of the complaint,' accept as true all non-conclusory factual allegations therein, and draw all reasonable inferences in plaintiff's favor to determine whether the allegations plausibly give rise to an entitlement to relief."  *Id.* (internal citation omitted).  Ultimately, "[t]he party opposing amendment bears the burden of demonstrating good reason for denial."  *Pinyuk v. CBE Group*, Inc., 17 CV 5753 (RRM) (CLP), 2019 WL 1900985, at *2 (E.D.N.Y. Apr. 29, 2019).  Under the Local Rules of this Court, a party requesting an opportunity to amend a pleading "must attach an unsigned copy of the proposed amended pleading to its motion papers."  N.D.N.Y. L.R. 15.1(a).

### i.  Proposed Equitable Tolling Allegations

First, Plaintiffs request leave to amend the pleadings to "provide additional allegations about the cover-up perpetrated by the Church that specifically prevented [the Kitler Plaintiffs] from discovering the facts necessary to bring forth a claim under TVPRA."  Dkt. No. 51 at 17.  Plaintiff seeks this amendment to bolster its equitable tolling allegations.  As previously noted, Plaintiffs have conceded that the Kitler Plaintiffs may not assert a cause of action under the TVPRA, regardless of equitable tolling, and therefore, their request to amend for this purpose is denied as futile.  *See* Dkt. No. 52 at 6, 10

### ii.  Proposed Gender Motivated Violence Act Allegations

Second, Plaintiffs seek to amend the pleadings to add a claim under New York City's Gender Motivated Violence Act ("GMVA") against Defendant Boyce.  Dkt. No. 51 at 18.  That statute provides a cause of action to anyone "claiming to be injured by a party who commits, directs, enables, participates in, or conspires in the commission of a crime of violence motivated by gender[.]"  N.Y.C. Admin. Code § 10-1104.  Plaintiffs assert that the amendment would add

allegations regarding an incident in New York City in which Defendant Boyce allegedly attempted to coerce Plaintiff Michael Kitler "into having anal sex with him[,]" while he was under the age of 18. *Id.*

Defendant Boyce opposes leave to amend based solely on Plaintiffs' failure to file a proposed amended pleading with their motion papers. Dkt. No. 54 at 11-13. The Court acknowledges that Plaintiffs failed to follow the procedure laid out in the Local Rules for moving to amend. Nevertheless, this Court has "broad discretion to determine whether to overlook a party's failure to comply with local court rules[.]" *Kurtz v. Snyder*, 9:22-CV-0487, 2025 WL 951481, at *3 (N.D.N.Y. Mar. 31, 2025) (citation omitted).

Here, though Plaintiffs have not provided a proposed version of the pleadings, Plaintiffs have provided sufficient detail regarding the basis for the proposed additional claim under the GMVA. Moreover, the described additional claim appears to potentially overcome the sole arguments for dismissal identified in Defendant Boyce's motion: timeliness and a lack of retroactivity.[14] Finally, Plaintiffs have not yet amended their pleadings, and the parties have not yet proceeded to discovery. Thus, leave to amend is warranted.

---

[14] A recent amendment to the GMVA re-opened the statute of limitations for claims under the statute until March 1, 2025. *See Dixon v. Reid*, 744 F. Supp. 3d 323, 327 n.4 (S.D.N.Y. 2024) (citing N.Y.C. Admin. § 10-1104); *Roldan v. Lewis*, 20-CV-03580 (HG) (MMH), 2025 WL 676090, at *11 (E.D.N.Y. Mar. 3, 2025). Moreover, unlike the TVPRA, a private right of action under the GMVA has existed since 2000, capturing at least part of the period of Michael Kitler's abuse. *See* Dkt. No. 1 at ¶ 4 (alleging abuse between 1994 and 2001). Thus, the claim would avoid the fate of the Kitler Plaintiffs' TVPRA claims so long as the alleged incident in New York City occurred after the enactment of the private right of action under the GMVA in 2000. *See Louis v. Niederhoffer*, No. 23-CV-6470-LTS, 2023 WL 8777015, at *1 (S.D.N.Y. Dec. 19, 2023) (dismissing claims under GMVA based on conduct pre-dating 2000).

### iii.  Obstructing Enforcement Allegations

Third, Plaintiffs seek to add allegations supporting a new claim pursuant to the TVPRA against the Church which assigns liability for "obstruct[ing] the enforcement" of the statute.  *See* Dkt. No. 52 at 28-29.  Such a claim would build on the current Complaint's allegations, made upon information and belief, that the Church allegedly obstructed a 2015 police investigation into Defendant Boyce's abuse of Plaintiff Ballantyne by adding new "specific allegations that, under information and belief, the Church wrongfully applied the clergy-penitent privilege to prevent key witnesses . . . from being interviewed by law enforcement[.]"  *Id.* at 29.  Plaintiffs assert the Church's conduct in 2015 constitutes obstruction in relation to both Plaintiff Ballantyne *and* the Kitler Plaintiffs' abuse, even though it was Plaintiff Ballantyne alone that contacted the police.  *Id.* at 28.  Plaintiffs argue that such a claim would avoid the timeliness and retroactivity issues which have proven fatal to the Kitler Plaintiffs' TVPRA claims because the alleged obstruction in 2015 occurred after the private right of action under the TVPRA was created and falls within the applicable statute of limitations.  *Id.* at 28.  The Church argues that the proposed amendments fail to state a claim for obstruction under the TVPRA, and therefore, leave should be denied as futile. Dkt. No. 60 at 5-7.

In order to state a claim for obstruction under the TVPRA, Plaintiffs must allege that a defendant "(1) kn[e]w of an effort to enforce the TVP[R]A and (2) intentionally obstruct[ed] or attempt[ed] to obstruct that enforcement effort." *Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d at 409.  Additionally, to bring any claim under the TVPRA, including for obstruction, a plaintiff must be a "victim" of a violation of the TVPRA.  *Id.* (citing 18 U.S.C. § 1595(a)).  While the statute does not define "victim," at least one court in this Circuit has found that a victim of

obstruction under the TVPRA is anyone "who suffered harm because the government's enforcement efforts were hindered." *Id.*

The Church first argues that the Kitler Plaintiffs are not "victims" under the statute. The Kitler Plaintiffs allege that they were abused between 1994 and 2001. Dkt. No. 1 at ¶ 4. Thus, an investigation into Defendant Boyce's conduct in 2015, even unhindered by the Church's alleged obstruction, would have been unable to prevent their abuse. Though the Court has no doubt that an investigation into Defendant Boyce's alleged abuse of another minor would have provided a measure of emotional relief to the Kitler Plaintiffs, and perhaps would have resulted in a similar after-the-fact investigation into their own allegations of abuse, the Court cannot find that the Kitler Plaintiffs were "victims" of the Church's sole alleged obstruction in 2015. The proposed amendments, as described in Plaintiffs' submissions, include no reference to any harm, separate from the harm caused by the initial abuse, suffered by the Kitler Plaintiffs because of the alleged obstruction. Moreover, allowing the Kitler Plaintiffs to bring a claim for obstruction based on an investigation into the abuse of another minor more than a decade after their last allegations of abuse would open the floodgates to otherwise time barred trafficking claims. However, the Court finds that Plaintiff Ballantyne does have standing to bring a claim for obstruction under the TVPRA.[15] At this stage, Plaintiff Ballantyne qualifies as a "victim" of the alleged 2015 obstruction. The police report pertained to his abuse, and he alleges that his abuse continued in the same year. Dkt. No. 1 at ¶ 10. Therefore, drawing all reasonable inferences from the Complaint and the proposed allegations, it is plausible that Plaintiff Ballantyne suffered harm

---

[15] The Church appears to construe Plaintiffs' opposition to their motion to dismiss to only seek to add a claim by the Kitler Plaintiffs involving obstruction. However, Plaintiffs clearly state that such a claim is available for "all Plaintiffs." Dkt. No. 52 at 28.

"because the government's enforcement efforts were hindered." *Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d at 409.

Next, the Church argues that the report to the police in 2015 does not qualify as an effort to enforce the TVPRA because the proposed allegations "do[] not assert the . . . police department investigated alleged violations of the TVP[R]A in 2015 or attempted an enforcement action against the Church of any kind." Dkt. No. 60 at 7. The Court is unconvinced. First, the Complaint clearly alleges that law enforcement pursued a "case" related to Plaintiff Ballantyne's report and interviewed Plaintiff Ballantyne. *See* Dkt. No. 1 at ¶ 129. Thus, to the extent that the Church argues that an investigation never existed at all, the argument is contradicted by the allegations. Second, to the extent that the Church argues that such an investigation was not designed to enforce the TVPRA specifically, Plaintiffs allege that the Church obstructed the investigation out of fear that they would be "publicly and criminally implicated in the sex abuse and trafficking of numerous minor male members of the [Church]." Dkt. No. 1 at ¶ 130. Again, drawing all reasonable inferences from the Complaint, the Court finds that Plaintiffs have at least alleged that Plaintiff Ballantyne's report to the police implicated the Church's alleged role in "trafficking," the purview of the TVPRA. That is sufficient. Third, to the extent that the Church argues that the claim fails because the Church was not the direct subject of the alleged investigation, the argument is contradicted by the Church's own proffered case. In *Deutsche Bank Aktiengesellschaft*, the court found that two banks' alleged failure to report suspicious activity for the purpose of frustrating an investigation *into Jeffrey Epstein* (not the banks) was sufficient to support a claim for obstruction under the TVPRA. 671 F. Supp. at 409. Therefore, the Church need not be the subject of the enforcement effort or investigation to be liable for obstruction.

Having found the Church's arguments against leave to amend unavailing, the Court grants

Plaintiff Ballantyne leave to add a claim of obstruction under the TVPRA based on the 2015 police report.[16]

## V.    CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Defendant Boyce's motion to dismiss, Dkt. No. 45, is **GRANTED IN PART AND DENIED IN PART**; and the Court further

**ORDERS** that all claims against Defendant Boyce except Plaintiff Ballantyne's claim pursuant to the TVPRA be **DISMISSED without prejudice**; and the Court further

**ORDERS** that the Church's motion to dismiss, Dkt. No. 49, is **GRANTED IN PART AND DENIED IN PART**; and the Court further

**ORDERS** that Plaintiffs Alan Kitler and Michael Kitler's claims against the Church pursuant to the TVPRA   are **DISMISSED without prejudice**; and the Court further

**ORDERS** that all other claims against the Church, including the state law claims and Plaintiff Ballantyne's claims pursuant to the TVPRA, may proceed; and the Court further

**ORDERS** that the Individual Defendants' motion to dismiss, Dkt. No. 59, is **GRANTED** and that the Individual Defendants are **DISMISSED without prejudice** from this case; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

---

[16] Notably, the parties do not address whether the proposed allegations of the Church's wrongful use of privilege to limit access to key witnesses constitutes obstruction under the statute.  The Court does not reach the issue. *See Pinyuk*, 2019 WL 1900985, at *2 (the Church "bears the burden of demonstrating good reason for denial").

**IT IS SO ORDERED.**

Dated: August 4, 2025
     Albany, New York

Anne M. Nardacci
U.S. District Judge